# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *for the Western District of New York*

_____

|  |  |
|---|---|
| | **NOVEMBER 2015 GRAND JURY**<br>**(Impaneled November 13, 2015)** |
| **THE UNITED STATES OF AMERICA** | **INDICTMENT** |
| *-vs-* | **Violations:**<br>Title 21, United States Code, Sections 846 and 841(a)(1);<br>Title 18, United States Code, Sections 1349, 1347 and 2<br>(114 Counts and 2 Forfeiture Allegations) |
| **EUGENE GOSY** | |

## COUNT 1

**(Conspiracy to Distribute Controlled Substances)**

**The Grand Jury Charges That:**

At all times relevant to the indictment:

**A.    The Defendant:**

1.    The defendant, EUGENE GOSY, was licensed to practice medicine in the State of New York as of July 1990 under medical license number 183330, issued by the New York State Department of Education.

2.    The defendant, EUGENE GOSY, maintained an office for the practice of medicine at 100 College Parkway, Suite 220, Williamsville, New York, within the Western District of New York.  GOSY represented himself to be a specialist in Neurology and Pain Management.

3.      The office within which the defendant, EUGENE GOSY, practiced medicine was known as the Gosy and Associates Pain and Neurology Treatment Center ("the GOSY Center").  The GOSY Center and GOSY employed approximately 50 employees in various capacities, including between 8 and 12 New York State Department of Education licensed and DEA registered, Mid-Level Providers consisting of Physician Assistants and Nurse Practitioners.  The defendant, EUGENE GOSY, was the principal owner and operator of the GOSY Center.

**B.      The Federal Law and Regulations:**

4.      The federal Controlled Substances Act (CSA) authorized medical practitioners (including physicians, physician assistants, and nurse practitioners) to prescribe and dispense controlled substances if: (a) the jurisdiction in which the practitioner was licensed to practice permitted that practitioner to prescribe such substances, and b) the practitioner was also registered with the Attorney General of the United States.  Upon successful application by the practitioner, the Drug Enforcement Administration (DEA) assigned a unique registration number to the qualifying medical practitioner.

5.      The defendant, EUGENE GOSY, was registered with the United States Drug Enforcement Administration (DEA) as of December 1990 and held DEA registration number BG2538126.  As such, GOSY was authorized to dispense, administer, and prescribe controlled substances in Schedules II through V of the CSA.

6.      Controlled substances listed in Schedules II through V of the CSA could only be prescribed by a registered medical practitioner when medically required and could only be taken in a manner prescribed by a doctor or medical practitioner for a particular patient.

7.      Pursuant to the CSA, a prescription for a controlled substance was not legal or effective unless it was dated, and signed on the day when the prescription was issued.

8.      Pursuant to federal regulation, medical practitioners registered with the DEA could not issue a prescription for a controlled substance unless "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."   Federal regulation further provided that, "[t]he responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner." Federal regulation explicitly stipulated that, "[a]n order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research [was] not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, [was] subject to the penalties provided for violations of the provisions of law relating to controlled substances."

9.      Pursuant to the Drug Addiction Treatment Act of 2000, physicians who met certain qualifications could treat opioid addiction with Schedule III, IV, and V narcotic medications specially approved by the Food and Drug Administration (FDA).   Such medications included Suboxone, Subutex and buprenorphine, and could be prescribed and dispensed by qualified physicians in treatment settings other than the traditional Opioid Treatment Program setting (e.g., a methadone clinic).

10.      In order to prescribe Suboxone, Subutex and buprenorphine in an office-based setting for treatment of opioid drug addiction, a physician had to be a "qualified physician" as defined under the CSA.   To become a qualified physician, a physician was required,

among other things, to complete eight hours of training with regard to treatment and management of opioid-dependent patients. A qualified physician could thereafter apply for a separate DEA "X" number designation, and treat up to 30 patients with Suboxone, Subutex, and buprenorphine in the first year. After the first year, a physician could apply to the DEA for authorization to treat up to 100 patients.

11.     On August 1, 2006, the defendant, EUGENE GOSY, received authorization from the DEA to dispense, administer, and prescribe buprenorphine for opioid addiction for a maximum of 30 patients under DEA registration number XG2538126. On January 12, 2009, GOSY was authorized by the DEA to treat a maximum of 100 patients for opioid addiction.

**C.     New York State Law:**

12.     Pursuant to the applicable provisions of the New York State Public Health Law, physicians and other authorized practitioners were permitted to dispense, administer, and prescribe controlled substances for legitimate medical purposes or treatment, other than treatment for addiction to controlled substances. N.Y.S. Public Health Law further required the practitioner to regulate the dosage and to prescribe and administer a quantity of such drugs no greater than that ordinarily recognized by members of his profession as sufficient for proper treatment. Such practitioners were further required to maintain a written patient record of administration, dispensing and prescription of all controlled substances. The patient record was required to contain sufficient information to justify the diagnosis and warrant the treatment. The record was required to contain at least the following information: patient identification data; chief complaint; present illness; physical

examination as indicated; diagnosis; other data which supports the diagnosis or treatment; and the regimen including the amount, strength, and directions for use of the controlled substance.

13.     Applicable provisions of the N.Y.S. Public Health Law further provided that a practitioner could, in the temporary absence of the initial prescriber, issue a controlled substance prescription for a patient as part of the continuing therapy prior to an examination of a patient under limited circumstances.  The limited circumstances required the authorized practitioner to: (a) have direct access to the patient's medical records and such records warranted continued controlled substance prescribing, or (b) have direct and adequate consultation with the initial prescriber, who assured the necessity of continuing the controlled substance prescribed, and with which the practitioner concurred. If the patient record was not available, the practitioner was required to document the activity for his or her own record and to transmit to the initial prescriber the prescription information so that the initial prescriber could include the prescription information in the patient's record.

## THE CONSPIRACY

14.     From in or about June 2006 through the date of this Indictment, in the Western District of New York, and elsewhere, the defendant, EUGENE GOSY, did knowingly, willfully and unlawfully combine, conspire, and agree with others, known and unknown to the Grand Jury, to commit the following offenses, that is, to distribute and dispense, and to cause to be distributed and dispensed controlled substances, including fentanyl, oxycodone, morphine, oxymorphone, methadone, hydromorphone, and amphetamine, all Schedule II controlled substances; ketamine, hydrocodone, and

buprenorphine, all Schedule III controlled substances; and diazepam, modafinil, zolpidem, clonazepam, propoxyphene, and alprazolam, all Schedule IV controlled substances; other than for a legitimate medical purpose and not in the usual course of professional practice, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), 841(b)(1)(E) and 841(b)(2).

### The Objects of the Conspiracy

15.     The objects of the conspiracy included, but were not limited to, the following:

a.     To unlawfully prescribe controlled substances in return for payments from patients and insurance companies.

b.     To attract persons interested in obtaining prescriptions for controlled substances by operating a pain management clinic in a manner contrary to accepted medical practice.

### Manner and Means of the Conspiracy

16.     The manner and means employed by the defendant, EUGENE GOSY, and his co-conspirators to carry out the conspiracy and effect its unlawful objects included, but were not limited to, the following:

a.     Contrary to accepted medical practice and in order to earn illicit profits from his medical practice, the defendant, EUGENE GOSY, issued prescriptions for controlled substances to patients despite indications that such patients were abusing and misusing the controlled substances he prescribed.

b.      The defendant, EUGENE GOSEY, evaded and intentionally ignored training requirements, including Continuing Medical Education courses, Worker's Compensation training, and Infectious Disease Control training, and sought to conceal such willful and intentional evasion by requiring members of his office staff to take the online courses purporting to be the defendant GOSY.

c.      Contrary to accepted medical practice, the defendant, EUGENE GOSY, and others known to the Grand Jury, failed properly to review and sign patient file notes.

d.      Contrary to accepted medical practice, and on certain occasions when the defendant, EUGENE GOSY, left the Buffalo, New York area for extended periods, the defendant signed blank prescriptions and permitted other persons known to the Grand Jury, to fill out the remaining information for the prescription, to wit: the name of the patient to whom the drug was dispensed, the drug to be dispensed, including controlled substances, and the dosage of the drug to be dispensed, and to then issue the prescriptions to patients.

e.      Contrary to accepted medical practice, the defendant, EUGENE GOSY, and the GOSY Center utilized a telephonic patient prescription renewal process, whereby patients could obtain prescriptions for Schedule II, III and IV controlled substances that were prepared by persons who were not medically trained or certified to issue such prescriptions.   In the time period between 2011 and 2014, approximately 300,000 prescriptions were issued by the defendant GOSY and members of the conspiracy without any legitimate and required medical review as required by the CSA and the N.Y.S. Public Health Law.

f.      Contrary to accepted medical practice and despite never having personally

completed the required medical training course in order to be a "qualifying physician" to treat narcotic addiction, the defendant, EUGENE GOSY, issued prescriptions to patients for buprenorphine, a Schedule III controlled substance, for the treatment of narcotic addiction.

g.      Contrary to accepted medical practice, beginning in or about 2008, the defendant, EUGENE GOSY, in order to circumvent the Federal requirement that he not treat more than 100 patients for opioid addiction, prescribed buprenorphine for the treatment of narcotic addiction under the cover of pain management.  In doing so, GOSY required Mid-Level Providers and others, known to the Grand Jury, not to document a patient's addiction when GOSY prescribed buprenorphine, and required further that the medical record of the patient read that the buprenorphine was for pain management rather than addiction.

h.      Contrary to accepted medical practice, the defendant, EUGENE GOSY, would prescribe controlled substances to individuals either without conducting a physical examination of certain individuals to verify the claimed illness or condition, or after conducting only a limited and inadequate physical examination.

**All in violation of Title 21, United States Code, Section 846.**

## COUNTS 2 to 6

**(Unlawful Distribution of Controlled Substances)**

**The Grand Jury Further Charges That:**

On or about and between the dates set forth below, in the Western District of New York, the defendant, EUGENE GOSY, did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, quantities of the controlled substances set forth below, to the persons set forth below, persons known to the Grand Jury, other than for a legitimate medical purpose and not in the usual course of professional practice.

| Count | Dates | Patient Initials | Controlled Substance | Schedule |
|---|---|---|---|---|
| 2 | 07/29/2011 to 12/21/2011 | KD | buprenorphine | III |
| 3 | 9/26/2012 to 4/17/2013 | RH | methadone oxycodone | II |
| 4 | 12/29/2011 to 1/10/2012 | LB | methadone buprenorphine alprazolam | II III IV |
| 5 | 02/13/2012 | EH | methadone | II |
| 6 | 10/22/2012 to 01/18/2013 | ML | oxycodone | II |

**All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), 841(b)(1)(E) and 841(b)(2), and Title 18, United States Code, Section 2.**

**COUNTS 7 to 29**

**(Unlawful Distribution of Buprenorphine)**

**The Grand Jury Further Charges That:**

On or about the dates set forth below, in the Western District of New York, the defendant, EUGENE GOSY, did knowingly, intentionally, and unlawfully distribute and dispense, and cause to be distributed and dispensed, quantities of buprenorphine, a Schedule III controlled substance, to the persons set forth below, persons known to the Grand Jury, other than for a legitimate medical purpose and not in the usual course of professional practice.

| Count | Date | Patient Initials |
|---|---|---|
| 7 | 5/12/2011 | JT |
| 8 | 5/13/2011 | TG |
| 9 | 8/19/2011 | CF |
| 10 | 12/1/2011 | IK |
| 11 | 12/1/2011 | TH |
| 12 | 12/1/2011 | TH |
| 13 | 12/1/2011 | FG |
| 14 | 12/1/2011 | RD |
| 15 | 12/2/2011 | DR |
| 16 | 12/2/2011 | TK |
| 17 | 12/5/2011 | MQ |
| 18 | 12/5/2011 | DT |
| 19 | 12/5/2011 | MQ |
| 20 | 1/8/2012 | DN |
| 21 | 1/9/2012 | JK |
| 22 | 1/27/2012 | TH |
| 23 | 3/15/2012 | RH |
| 24 | 5/19/2012 | JP |
| 25 | 7/24/2012 | JT |
| 26 | 10/18/2012 | SN |
| 27 | 6/3/2013 | JR |
| 28 | 8/29/2013 | MS |
| 29 | 8/29/2013 | MS |

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E), and Title 18, United States Code, Section 2.**

## COUNTS 30 to 95

**(Unlawful Distribution of Buprenorphine)**

**The Grand Jury Further Charges That:**

On or about the dates set forth below, in the Western District of New York, the defendant, EUGENE GOSY, did knowingly, intentionally and unlawfully distribute and dispense, and cause to be distributed and dispensed, quantities of buprenorphine, a Schedule III controlled substance, to the persons set forth below, persons known to the Grand Jury, other than for a legitimate medical purpose and not in the usual course of professional practice.

| Count | Date | Patient Initials |
|-------|------|------------------|
| 30 | 04/27/11 | JP |
| 31 | 04/28/11 | IK |
| 32 | 05/04/11 | VD |
| 33 | 05/06/11 | JR |
| 34 | 06/02/11 | JL |
| 35 | 06/04/11 | ES |
| 36 | 06/10/11 | LH |
| 37 | 06/10/11 | CS |
| 38 | 06/16/11 | RP |
| 39 | 06/22/11 | ML |
| 40 | 07/11/11 | AS |
| 41 | 08/08/11 | JB |
| 42 | 08/12/11 | MC |
| 43 | 08/12/11 | JE |
| 44 | 09/08/11 | MM |
| 45 | 09/27/11 | AW |
| 46 | 10/20/11 | BG |
| 47 | 11/17/11 | BG |
| 48 | 11/21/11 | JV |
| 49 | 11/28/11 | CR |

| Count | Date | Patient Initials |
|-------|------|------------------|
| 50 | 11/30/11 | AW |
| 51 | 12/09/11 | RH |
| 52 | 12/09/11 | RH |
| 53 | 12/13/11 | WG |
| 54 | 12/19/11 | BG |
| 55 | 12/27/11 | TO |
| 56 | 01/06/12 | RH |
| 57 | 01/12/12 | AW |
| 58 | 01/17/12 | BG |
| 59 | 01/18/12 | NF |
| 60 | 02/23/12 | PS |
| 61 | 03/01/12 | MN |
| 62 | 03/07/12 | BG |
| 63 | 04/03/12 | BG |
| 64 | 04/09/12 | JB |
| 65 | 05/04/12 | BG |
| 66 | 05/04/12 | BG |
| 67 | 05/23/12 | CG |
| 68 | 05/25/12 | KD |
| 69 | 06/04/12 | FG |
| 70 | 06/12/12 | BG |
| 71 | 06/12/12 | CP |
| 72 | 06/21/12 | CP |
| 73 | 09/05/12 | EB |
| 74 | 10/08/12 | CG |
| 75 | 10/18/12 | SN |
| 76 | 10/29/12 | CG |
| 77 | 11/28/12 | CG |
| 78 | 12/08/12 | MS |
| 79 | 12/27/12 | CG |
| 80 | 12/28/12 | AB |
| 81 | 12/28/12 | IK |
| 82 | 02/28/13 | IK |
| 83 | 07/16/13 | DL |
| 84 | 09/04/13 | MF |
| 85 | 09/13/13 | AS |
| 86 | 09/19/13 | CR |
| 87 | 09/23/13 | MM |
| 88 | 10/12/13 | KB |
| 89 | 11/10/13 | JS |
| 90 | 12/30/13 | JN |
| 91 | 01/10/14 | IK |
| 92 | 03/14/14 | KS |
| 93 | 04/14/14 | KS |

| Count | Date | Patient Initials |
|-------|------|------------------|
| 94 | 04/22/14 | IK |
| 95 | 05/27/14 | MA |

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E), and Title 18, United States Code, Section 2.

## COUNTS 96 to 100

**(Unlawful Distribution of Buprenorphine)**

**The Grand Jury Further Charges That:**

On or about the dates set forth below, in the Western District of New York, the defendant, EUGENE GOSY, did knowingly, intentionally and unlawfully distribute and dispense, and cause to be distributed and dispensed, quantities of buprenorphine, a Schedule III controlled substance, to the persons set forth below, persons known to the Grand Jury, other than for a legitimate medical purpose and not in the usual course of professional practice.

| Count | Date | Patient Initials |
|-------|------|------------------|
| 96 | 06/10/2011 | CS |
| 97 | 08/01/2011 | FS |
| 98 | 09/24/2012 | SJ |
| 99 | 04/10/2013 | JG |
| 100 | 04/30/2013 | KM |

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E), and Title 18, United States Code, Section 2.

## COUNTS 101 to 105

### (Unlawful Distribution of Modafinil)

### The Grand Jury Further Charges That:

On or about the dates set forth below, in the Western District of New York, the defendant, EUGENE GOSY, did knowingly, intentionally and unlawfully distribute and dispense, and cause to be distributed and dispensed, quantities of modafinil, a Schedule IV controlled substance, to the person set forth below, a person known to the Grand Jury, other than for a legitimate medical purpose and not in the usual course of professional practice.

| Count | Date | Patient Initials |
|-------|------|------------------|
| 101 | 06/30/2011 | DD |
| 102 | 12/28/2011 | DD |
| 103 | 08/08/2012 | DD |
| 104 | 09/24/2013 | DD |
| 105 | 06/27/2014 | DD |

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(2), and Title 18, United States Code, Section 2.**

## COUNT 106

### (Conspiracy to Commit Health Care Fraud)

### The Grand Jury Further Charges That:

1.     The allegations of Count 1 are incorporated by reference and re-alleged as if fully set forth herein.

2.     The New York State Workers' Compensation Board was a state agency that administered claims related to medical benefits for workers who were injured or became ill as a result of their employment.  The Workers' Compensation Board also promulgated and

implemented the rules and regulations for the payment and processing of claims.   The claims were processed and paid by various insurance companies.

3.      The New York State Insurance Fund, and the other insurance companies that processed and paid Workers' Compensation claims, were "health care benefit program[s]" as defined in Title 18, United States Code, Section 24(b), that is, a "public or private plan or contract, affecting commerce, under which any medical benefit, item or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract."   The New York State Insurance Fund had offices in the Western District of New York.

4.      As part of the defendant, EUGENE GOSY's, medical practice, he was authorized by the New York State Workers' Compensation Board to provide services to patients with Workers' Compensation claims that were insured, covered and paid by various insurance companies, including The New York State Insurance Fund.

5.      In the course of treating such patients, the defendant, EUGENE GOSY, did submit, and cause the submission of, claims to both the New York State Workers' Compensation Board and to the various insurance companies who underwrote these claims, including The New York State Insurance Fund.   Each claim included two parts: first, the New York State Workers' Compensation Board claim form which was to be signed, and certified, by the defendant as the Board authorized health care provider and which set forth the patient's basic information, the employer's information, the doctor's information, the services provided and the dates of service; and second, a narrative detailing the patient's visit which was to be signed, and certified, by the defendant as the Board authorized health

care provider. In processing such claims for payment, the insurance companies to whom the claims were submitted relied on the defendant's signatures as the representation that the claim complied with the requirements of the Workers' Compensation Board.

6.     Except in some circumstances not relevant to the defendant's practice, the Workers' Compensation Board required that Board authorized physicians treat or supervise the treatment of patients.   The Board did not authorize Mid-Level Providers such as Physician Assistants or Nurse Practitioners to treat patients independently, but rather only under the supervision of a Board authorized physician.

7.     The New York Workers' Compensation Law, Section 13-b (1)(c) required that "no person shall render medical care or conduct independent medical examinations under this chapter … [except]: (c) under the active and personal supervision of an authorized physician."  It additionally required that, "this supervision shall be evidenced by signed records of instructions for treatment and signed records of the patient's condition and progress."

8.     The New York Workers' Compensation Medical Fee Schedule required under "General Ground Rule" 11-A(1) that "the services of nonphysicians [such as Physician Assistants (PAs) and Nurse Practitioners (NPs)] must be rendered under the physician's direct supervision."   Section 11-A(2) further explained, "direct personal supervision in the office setting does not mean that the physician must be present in the same room with a PA or NP.  However, the physician must be present in the office suite and immediately available to provide assistance and direction throughout the time the PA or NP is performing the services."

9. In or about August 2009, the defendant, EUGENE GOSY, received a letter of Administrative Warning from the State of New York Workers' Compensation Board. The letter admonished the defendant that he must "personally and actively supervise all professional medical services performed by registered nurses or other persons trained in laboratory or diagnostic techniques in accordance with Workers' Compensation Law Section 13-b (1)(c)." This letter was responded to on behalf of the defendant by a letter which stated that the defendant has reviewed, and will comply with, the requirements of the Workers' Compensation Board in his practice of medicine.

10. Prior to September 2010, the defendant, EUGENE GOSY, held medical malpractice insurance with the Medical Liability Mutual Insurance Company ("MLMIC"). In or about September 2010, MLMIC conducted an audit of the defendant's medical practice and made 39 recommendations. The second recommendation provided as follows: "Priority Recommendation: Assign unique electronic signatures to all staff members. The electronic signature must only be used by the individual to whom it is assigned, so that entries can be accurately attributed to the person who generated them." One purpose of this recommendation was to ensure that, as required by the Workers' Compensation program, the defendant personally signed and certified all Workers' Compensation claims for services provided. This recommendation was purportedly accepted by the defendant and adopted as office policy in or about March 2011.

## A. Object of the Conspiracy

11. Beginning on a date unknown, but no later than in or about September 2010, through in or about December 2015, the exact dates being unknown to the Grand Jury, in

the Western District of New York, and elsewhere, the defendant, EUGENE GOSY, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown to the Grand Jury, to knowingly and willfully execute a scheme and artifice to defraud the insurance companies who paid New York State Workers' Compensation claims, including The New York State Insurance Fund, health care benefit programs as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money owned by and under the custody and control of these health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

**B.  Manner and Means of the Conspiracy**

12.     It was part of the conspiracy and scheme and artifice to defraud that the defendant, EUGENE GOSY, although he traveled outside the Western District of New York and was therefore not present to supervise actively and personally the treatment of patients by Mid-Level Providers at his office, did instruct members of his staff to examine and treat patients in order that claims for such treatment could be fraudulently submitted under the Workers' Compensation program as if the defendant had provided the required supervision.

13.     It was further part of the conspiracy and scheme and artifice to defraud that the defendant, EUGENE GOSY, approved, submitted and caused the submission of fraudulent claims for treatment provided to patients by Mid-Level Providers that was not personally and actively supervised by the defendant while he was outside the Western

District of New York, including the claims in the approximate total amounts for treatment

purportedly supervised by the defendant during the time periods, and while the defendant

was at the destinations, set forth below.

| Departure Date | Destination | Return Date | Amount Billed |
|---|---|---|---|
| 10/21/2010 | Budapest, Hungary | 10/25/2010 | $   4,846.65 |
| 11/23/2010 | Ukraine | 11/28/2010 | $   2,138.46 |
| 1/25/2011 | Odessa, Ukraine | 1/30/2011 | $ 12,300.08 |
| 4/17/2011 | Barcelona, Spain | 4/22/2011 | $ 14,744.77 |
| 5/10/2011 | Paris, France | 5/15/2011 | $ 10,633.43 |
| 8/15/2011 | Ukraine | 8/21/2011 | $ 15,510.41 |
| 9/21/2011 | Bordeaux, France | 9/25/2011 | $ 12,137.82 |
| 1/7/2012 | Detroit, Michigan | 1/9/2012 | $   5,288.33 |
| 1/24/2012 | Moscow, Russia | 1/29/2012 | $ 10,908.43 |
| 3/15/2012 | St. Thomas | 3/18/2012 | $ 10,690.78 |
| 5/16/2012 | Honolulu, Hawaii | 5/20/2012 | $ 14,025.83 |
| 7/21/2012 | Berlin, Germany | 7/29/2012 | $ 16,598.38 |
| 10/16/2012 | Budapest, Hungary | 10/21/2012 | $   8,290.59 |
| 3/6/2013 | Odessa, Ukraine | 3/11/2013 | $ 14,123.82 |
| 4/25/2013 | Punta Cana, Dominican Republic | 4/29/2013 | $   7,504.34 |
| 5/31/2013 | Budapest, Hungary | 6/5/2013 | $ 11,402.56 |
| 8/22/2013 | Paris, France | 8/29/2013 | $ 22,145.09 |
| 10/3/2013 | Budapest, Hungary | 10/6/2013 | $   6,973.58 |
| 11/27/2013 | Cancun, Mexico | 12/2/2013 | $   4,917.24 |
| 1/2/2014 | Ukraine | 1/7/2014 | $   8,743.40 |
| 5/17/2014 | Athens, Greece | 5/25/2014 | $ 15,049.27 |
| 9/16/2014 | Venice, Italy | 9/22/2014 | $ 17,445.13 |

14.     It was further part of the conspiracy and scheme and artifice to defraud that

the defendant, EUGENE GOSY, instructed one or more staff members in his office

electronically to sign the defendant's name to Workers' Compensation claims, and patient

narratives that were included in the claims, submitted to various insurance companies,

including The New York State Insurance Fund, in order fraudulently to represent to the

insurance companies that the defendant had personally reviewed and certified the claim and the narrative attached to the claim.

15.     It was further part of the conspiracy and scheme and artifice to defraud that the defendant, EUGENE GOSY, instructed one or more staff members in his office electronically to sign the defendant's name to Workers' Compensation claims, and patient narratives that were included in the claims, submitted to various insurance companies, including The New York State Insurance Fund, in such a way that it appeared to be generated by the defendant's own computer in order fraudulently to represent to the insurance companies that the defendant had personally reviewed and certified the claim and the narrative attached to the claim.

16.     It was further part of the conspiracy and scheme and artifice to defraud that the defendant, EUGENE GOSY, instructed one or more staff members in his office to keep as secret the practice of electronically signing the defendant's name to claims and patient narratives submitted to various insurance companies, including The New York State Insurance Fund under the Workers' Compensation program.

**All in violation of Title 18, United States Code, Section 1349.**

**COUNTS 107 to 114**

**(Health Care Fraud)**

**The Grand Jury Further Charges That:**

1.      The allegations of Counts 1 and 106 are incorporated by reference and re-alleged as if fully set forth herein.

2.      Between in or about October 2011 and in or about August 2013, in the Western District of New York, the defendant, EUGENE GOSY, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud The New York State Insurance Fund, a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of The New York State Insurance Fund in connection with the delivery of and payment for health care benefits, items, and services.

3.      As part of the scheme and artifice, the defendant, EUGENE GOSY, caused each claim form submitted to The New York State Insurance Fund, and the patient narrative attached to each claim, as set forth below, to be signed on his behalf as the "Board Authorized Health Care Provider" under a line which stated that "I actively supervised the health care provider named below who provided these services," in order fraudulently to represent that the defendant supervised the member of his staff providing the services when in fact the defendant was not even in Buffalo, New York on the dates the services were provided.

4.      As part of the scheme and artifice, the defendant, EUGENE GOSY, caused the patient narrative attached to each claim form submitted to The New York State Insurance Fund, as set forth below, to be signed on his behalf in order fraudulently to represent that the defendant personally reviewed and signed the patient narrative.

5.      As part of the scheme and artifice, the defendant, EUGENE GOSY, caused The New York State Insurance Fund to receive electronically the claims set forth below from the defendant's medical practice through a third party vendor and to pay the claims to the defendant's medical practice by check notwithstanding the facts that the defendant did not supervise the member of his staff who provided the services and the defendant did not personally review and sign the patient narrative attached to each claim.

| Count | Patient | Claim ID | Date of Service | Date Narrative Purportedly Signed by Defendant | Amount Billed |
|-------|---------|----------|-----------------|-----------------------------------------------|---------------|
| 107 | JR | 62225305 | 10/17/2012 | 10/25/12 | $ 327.71 |
| 108 | TW | 62492459 | 10/18/2012 | 10/25/12 | $ 250.00 |
| 109 | JW | 44768380 | 3/7/2013 | 3/15/13 3/19/13 | $ 327.71 |
| 110 | AA | 42988261 | 3/8/2013 | 3/15/13 | $ 327.71 |
| 111 | FK | 62099171 | 6/3/2013 | 6/10/13 | $ 327.71 |
| 112 | TL | 47450499 | 6/4/2013 | 6/10/13 | $ 327.71 |
| 113 | NH | 65551616 | 8/26/2013 | 8/29/13 | $ 327.71 |
| 114 | SW | 45144185 | 8/27/2013 | 8/29/13 | $ 190.59 |

**All in violation of Title 18, United States Code, Section 1347.**

## FIRST FORFEITURE ALLEGATION

**(Proceeds from Conspiracy to Distribute Controlled Substances)**

**The Grand Jury Alleges That:**

1.      The allegations of Count 1 are incorporated by reference and re-alleged as if fully set forth herein.


2.      As a result of a conviction on Count 1 of this Indictment, the defendant, EUGENE GOSY, shall forfeit to the United States any and all property constituting and derived from any proceeds obtained, directly and indirectly, as a result of such violations and any and all property used, and intended to be used, in any manner and part, to commit and to facilitate the commission of such violations, including, but not limited to:

**MONETARY AMOUNT:**

     a.      For the calendar year 2012, the sum of Two Million, Eight Hundred Ninety Eight Thousand, Four Hundred and Ninety Five ($2,898,495.00) dollars in United States Currency.  If said amount is not readily available then a monetary judgment for the same.

### SUBSTITUTE ASSETS

3.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

     a.      cannot be located upon the exercise of due diligence;

     b.      has been transferred or sold to, or deposited with a third party;

     c.      has been placed beyond the jurisdiction of the court;

     d.      has been substantially diminished in value; or

     e.      has been commingled with other property which cannot be subdivided

without difficulty; it is the intention of the United States of America to substitute and seek the forfeiture of any other property of the defendant, EUGENE GOSY, up to the value above including but not limited to:

## REAL PROPERTY:

The premises and real property with its buildings, improvements, fixtures, attachments and easements, known as 9648 Cobblestone Drive, that is, all that tract or parcel of land, situate in the Town of Clarence, County of Erie and State of New York and more particularly described in a certain deed recorded in Liber 11108 of deeds at page 5117, of the Erie County Clerk's Office.

## FINANCIAL ACCOUNTS:

a.   Individual Retirement Account (IRA), held in the name of Eugene J. Gosy at The Legend Group;

b.   All monies for the benefit of Eugene J. Gosy held in the name of Gosy and Associates, 401(k) at The Legend Group; and

c.   All monies for the benefit of Eugene J. Gosy held in Select account ending in 37, M&T Bank, in the name of Dr. EUGENE J GOSY.

## VEHICLES/WATERCRAFT (titled and registered to Eugene Gosy):

a.   One 2005 Ford GT Coupe, VIN: 1FAFP90S95Y401945;

b.   One 1997 Lotus Esprit, VIN: SCCFE33C8VHF65335;

c.   One 2011 BMW 3 Series 328I convertible, VIN: WBADW3C53BE439687;

d.   One 2009 Porsche 911 Cabriolet 2D convertible, VIN: WP0CB29949S754427;

e.   One 2011 Mercedes-Benz M Class ML350 Wagon 4Dr, VIN: 4JGBB8GBXBA720035;

f.   One 2003 Sunseeker USA Inc Pleasure boat- 56' length, inboard propulsion, Hull #XSK02135G203; and

g.      The sum of $36,233.46 in United States Currency (traceable to one 2000 Ferrari 360 Modena F1, VIN: ZFFYU51AXY0121286), the sum of which is now in the custody of the United States Marshals Service.

**All pursuant to Title 21, United States Code, Sections 853(a) and 853(p).**

## SECOND FORFEITURE ALLEGATION

**(Proceeds from Health Care Fraud)**

**The Grand Jury Further Alleges That:**

1.      The allegations of Counts 107 through 114 are incorporated by reference and re-alleged as if fully set forth herein.

2.      As a result of his convictions of Counts 107 through 114, or any one of them, the defendant, EUGENE GOSY, shall forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the above offenses, including, but not limited to:

**MONETARY AMOUNT:**

a.      The sum of Two Hundred and Twenty Three Thousand, Three hundred and Nine dollars and Ninety Seven cents ($223,309.97) in United States Currency. If said amount is not readily available then a monetary judgment for the same.

## SUBSTITUTE ASSETS

3.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty; it is the intention of the United States of America to substitute and seek the forfeiture of any other property of the defendant, EUGENE J. GOSY, up to the value above including but not limited to:

## REAL PROPERTY:

The premises and real property with its buildings, improvements, fixtures, attachments and easements, known as 9648 Cobblestone Drive, that is, all that tract or parcel of land, situate in the Town of Clarence, County of Erie and State of New York and more particularly described in a certain deed recorded in Liber 11108 of deeds at page 5117, of the Erie County Clerk's Office.

## VEHICLES/WATERCRAFT (titled and registered to Eugene J. Gosy):

a.   One 2005 Ford GT Coupe, VIN: 1FAFP90S95Y401945;

b.   One 1997 Lotus Esprit, VIN: SCCFE33C8VHF65335;

c.   One 2011 BMW 3 Series 328I convertible, VIN: WBADW3C53BE439687;

d.   One 2009 Porsche 911 Cabriolet 2D convertible, VIN: WP0CB29949S754427;

e.   One 2011 Mercedes-Benz M Class ML350 Wagon 4Dr, VIN: 4JGBB8GBXBA720035;

f.   One 2003 Sunseeker USA Inc Pleasure boat- 56' length, inboard propulsion, Hull #XSK02135G203; and

g.   The sum of $36,233.46 in United States Currency (traceable to one 2000 Ferrari 360 Modena F1, VIN: ZFFYU51AXY0121286), the sum of which is now in the custody of the United States Marshals Service.

**All pursuant to Title 18, United States Code, Section 982(a)(7) and Title 21,**

**United States Code, Section 853(p).**

DATED:  Buffalo, New York, April 26, 2016.


WILLIAM J. HOCHUL, JR.
United States Attorney


BY:   S/GEORGE C. BURGASSER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5811
George.C.Burgasser@usdoj.gov


BY:   S/ELIZABETH R. MOELLERING
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5872
Elizabeth.Moellering@usdoj.gov


A TRUE BILL:


S/FOREPERSON